Charlie L. DEAN, Jr., Administrator of the Estate of L. T. McGee, Appellee,

v.

Edmund V. COLE, Appellant.

No. 9059.

United States Court of Appeals Fourth Circuit.

Argued Oct. 4, 1963.

Decided Jan. 7, 1964.

**908**

Irvine F. Belser, Jr., Columbia, S. C. (Roger M. Heyward and Belser, Belser & Baker, Columbia, S. C., on brief), for appellant.

Henry Hammer, Columbia, S. C. (Henry H. Edens, Columbia, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and THOMSEN, District Judge

**J. SPENCER BELL, Circuit Judge.**

The defendant appeals from a judgment of the district court without jury in a wrongful death action. Shortly after midnight of May 12–13, 1956, plaintiff's decedent, a 69 year old farmer, was run over and killed by a passing motorist in a rural area between Sumter and Turbeville, South Carolina. The two lane road was straight for several miles each way from the place of the accident. The night was clear. There were no intersecting roads. The testimony of the plaintiff's only eyewitness is carefully summarized as follows: The witness left Sumter for Turbeville, traveling in an easterly direction, with his headlights burning. About two miles out of Sumter a 1956 Lincoln convertible pulled sharply in front of him from the south shoulder of the highway, necessitating an application of brakes to avoid a collision. At this time, another car was behind the witness' car. The witness followed the Lincoln closely for a couple of hundred yards, then passed it. After he had passed the Lincoln, he observed through his rear view mirror that the car following him stayed behind the Lincoln. The witness accelerated to between 60 and 70 miles an hour, traveling a distance of 13 or 14 miles, while he observed the headlights of these cars in his rear view mirror. He noticed that both of these cars remained in their relative positions approximately a mile to his rear. While these conditions maintained with respect to the relative positions and speeds of the three cars, the witness observed a man walking west toward Sumter on the south shoulder of the highway. Two or three hundred yards farther east he observed on his right an automobile parked off the road almost at right angles thereto, with its left front door open and dome light burning. He then traveled a hundred yards or so farther to a driveway, where he turned around, having decided to offer help to the pedestrian. As the witness traveled back in a westerly direction, when he was 500 or 600 yards away from the place of the accident he observed the oncoming headlights of a car suddenly zigzag or weave for a second or two. Almost at the same instant he saw a shadow pass in front of the car lights. It appeared to the witness that the oncoming car cut slightly across the center line, then straightened up and continued towards him in its proper or eastbound lane.[1] As the first car passed him he noticed that its left front headlight had gone out. When the two cars had passed him, he observed the deceased lying in the westbound lane only a few feet in front of his car. He stopped, opened his door, looked back, but observed no lights on either of the cars which had passed, concluding that both cars had cut off all their lights and sped up as they left the scene. The witness was at the least from 200 to 300 yards away at the moment of impact. He could not see whether the deceased was "thrown" any distance or not. Upon this evidence, the district court found the driver of the car described by the witness guilty of wilful and wanton negligence which was the

---

1. Skid marks on the highway at the site tended to confirm this, as they commenced in the eastbound lane, then crossed over just past the center line into the westbound lane at or near the location of the body.

proximate cause of the death of plaintiff's decedent. The court also found upon this evidence that the deceased was not guilty of contributory negligence.

The defendant strenuously insists that there is not substantial evidence in the record to support the court's finding that the defendant was the driver of the hit and run car in spite of the considerable amount of circumstantial evidence in the case tending to show that he was the owner of the car in question. We do not reach this question, as we find that the evidence will not support the court's findings with regard to primary and contributory negligence.

■ For convenience, we shall assume *arguendo* that the defendant was proven to be the driver of the car which struck and killed the deceased. The scene of the accident was on a straight, dry, level, open highway in good weather. The only specific act of negligence at or prior to the time of the accident with which the defendant is charged was speeding in excess of the posted limit, and that charge was based upon the testimony of the witness that he himself was driving between 60 and 70 miles per hour and that the defendant's car was keeping up with him "about a mile" to his rear. The posted speed limit was 55 mph. Even conceding the witness' remarkable powers of vision and depth perception—the facts to which he testified do not support his opinion. If traveling for 12 miles at an average of 65 mph he had gained a mile on the defendant's car when he passed the pedestrian—then traveled an additional ¾ mile [2]—turned around and recovered all but 400 or 500 yards of this distance before the following car began to zigzag as it approached the pedestrian—the mathematical probabilities do not sustain the proposition that defendant's car was traveling in excess of 55 mph. But we do not rest our opinion on mathematical computation, because too many unknown factors existed—we simply say that the evidence does not supply sufficient facts

to justify the court in accepting the witness' estimate of speed on this critical issue. Even, however, if we concede this point there is still a fatal weakness in the plaintiff's proof. Unless we know at what distance the deceased entered the highway ahead of the oncoming car, we cannot find that the speed of the car was the proximate or efficient cause of his death. Section 26–7 of the Code of Laws of South Carolina (1952) provides that:

"The provisions of chapter 7 of Title 46 declaring prima facie speed limitations shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of the accident."

We may not infer that the speed of the automobile was the proximate cause of the accident unless we have some factual basis to support the inference. Similarly there is no basis for an inference of negligence in the evidence that the car "zigzagged" into the westbound lane for a second or two before, or at the instant of, the impact in the absence of any evidence as to when or at what distance the deceased entered the road in front of the oncoming car.

■ The plaintiff's own evidence in this case shows his deceased to have been guilty of contributory negligence as a matter of law. That evidence shows that the deceased was walking 15 or 20 feet off the road on the south shoulder of the eastbound lane of the highway. Both the testimony of the eyewitness and the physical facts indicate that the deceased was struck a few seconds later at or near the center line of the highway. The facts make it clear that the deceased got into the highway at a time when vehicles were approaching from both directions, their headlights clearly visible, and traveling at considerable speed. There was no obstruction to interfere with or obscure his vision. There was no intersecting road or driveway—simply wide

2. Evidence of later measurements showed it to be ¾ of a mile from the location of the body to where the witness turned around.

open country. The law of South Carolina gave the right of way to the vehicular traffic—not the pedestrian. Code of Laws of South Carolina (1952), § 46–435. To cross the highway under such circumstances was negligence as a matter of law. Even if the defendant were guilty of negligence, this contributory negligence of the deceased must bar plaintiff's recovery.

In Smith v. Biggs, 223 F.2d 839 (4 Cir.), *cert. denied,* 351 U.S. 912, 76 S.Ct. 701, 100 L.Ed. 1446 (1955), a diversity case, arising under the laws of South Carolina, strikingly similar on the facts to this case, the court said:

> "Obviously, Lee Biggs, whether crossing the road or walking along the road, owed a duty to look. If he failed to look, he was clearly guilty of contributory negligence. If he looked he could not have failed to see the lights of Smith's approaching car. * * * And, of course, if Lee Biggs saw the rapidly approaching car, yet walked out on the road right into the car, his conduct was even more reckless, with an utter disregard for his own safety; * * *. 'He either did not look to the east, or, if he looked, he did so in such a careless and negligent manner that he failed to see what was obvious. In either event he was guilty of negligence as a matter of law'." 223 F.2d at 841.

The Smith case cites numerous decisions of this court in support of its position. This is also the law of South Carolina. Carma v. Swindler, 228 S.C. 550, 91 S.E.2d 254 (1956), citing and approving the Smith decision. See also Williams v. Ford, 233 S.C. 304, 104 S.E.2d 378 (1958).

 The plaintiff argues that the driver's subsequent failure to stop and render assistance was evidence of wilful and wanton negligence which would overcome deceased's contributory negligence. Where primary negligence does exist, subsequent conduct of the actor may be considered by the fact finding tribunal in determining the degree of primary negligence. Leaving the scene of an accident may strongly indicate that the responsible party was not only negligent, but exhibited a callous disregard for the safety of others. But in the present case, there being no substantial evidence of prior negligence to support the court's finding, defendant's subsequent act of departing the scene without rendering assistance cannot relate back and transform non-negligent conduct into wilful and wanton conduct as a matter of law. *Cf.* Hallman v. Cushman, 196 S.C. 402, 13 S.E.2d 498 (1941).

There being no substantial evidence to support the court's findings on negligence and contributory negligence, the judgment is

Reversed.